Evelyn GLOVER, Plaintiff-Appellant,

v.

The HOUSING AUTHORITY OF the CITY OF BESSEMER, ALABAMA, et al., Defendants-Appellees.

No. 30931.

United States Court of Appeals, Fifth Circuit.

June 9, 1971.

---

4. Miss.Code Ann. § 1454 (1942).

James M. Nabrit, III, Melvin L. Watt, New York City, for plaintiff-appellant.

J. W. Patton, Jr., Huey, Stone & Patton, Bessemer, Ala., for defendants-appellees.

Before TUTTLE, WISDOM and INGRAHAM, Circuit Judges.

WISDOM, Circuit Judge:

This case involves the procedural protections to be accorded a tenant before eviction from a public housing project.

Evelyn Glover was a resident for over eight years in a project operated by the Housing Authority of Bessemer, Alabama. March 17, 1970, Mrs. Glover met with Mrs. Vines, the superintendent of the project in which she lived, at the latter's request. Mrs. Vines said that the Authority had heard rumors that a man was living with Mrs. Glover and had free access to her apartment; that for this reason the Authority was going to terminate Mrs. Glover's month to month lease. The lease bound the tenant:

> Not to assign this lease, nor to sublet or transfer possession of the premises; nor to give accommodations to boarders or lodgers; nor to use or permit the use of the dwelling for any other purpose than as a private dwelling, solely for the tenant and his family as specifically recorded in the tenant file.

Mrs. Glover denied the accusation and asked for the names of her accusers. Mrs. Vines refused this information, handing her a written notice to vacate the premises. The notice contained no specification of reasons for the eviction.

March 31 Mrs. Glover requested through an attorney a full hearing on the accusations. The Authority's Executive Director refused the request on the ground that she had already been given a hearing. At the time, the Authority was in substantial compliance with the existing regulations of the United States Department of Housing and Urban Development (HUD).[1] Mrs. Glover ten-

Demetrius C. Newton, Birmingham, Ala., Jack Greenberg, Sylvia Drew,

---

1. A HUD circular, February 7, 1967, directed housing authorities to inform the tenant "in a private conference or other appropriate manner" of the reasons for

dered April rent. The Authority refused to accept the rent and delivered a second notice to vacate the premises.

The Housing Authority then filed an action for unlawful detainer in Alabama state court. April 29, 1970, Mrs. Glover found a summons to appear in this action taped to her door. Before the hearing on the matter, Mrs. Glover was temporarily forced to vacate her apartment because of flooding from heavy rainfall. During her absence the Housing Authority had the lock on the door changed so that she could not return to her apartment. The Authority then dismissed the unlawful detainer action.

Mrs. Glover sued in the district court for an injunction, enjoining the Authority from evicting her, refusing to renew her lease, denying her the opportunity for a fair hearing before eviction, and maintaining segregated housing units.[2] The court held that the Authority had complied with the applicable requirements of Housing and Urban Development Department regulations and that the evidence was convincing that Mrs. Glover had violated her lease by having someone other than a member of her family living in her apartment.[3] The court also concluded that if the plaintiff had desired a hearing on the reasons for terminating her lease, she could have had one in the state courts;[4] that, in

the eviction and give him "an opportunity to make such reply or explanation as he may wish". *See* Thorpe v. Housing Authority of Durham, 1969, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474.

2. The district court found that although "the complaint resounds with allegations of racial discrimination, there was not a particle of evidence of any discrimination on race, religion, or any grounds". The plaintiff offered no evidence to show discrimination.

3. Mrs. Glover testified that she was seeing a man named Elijah Nunn, but that he did not live with her or have a key to her apartment; that the only people living with her were two grandchildren; that Mr. Nunn lived at Lipscomb with his grandmother, and that she often used his car. Mrs. Alma Vines, manager, testified that she did not know of her own knowledge if a boarder lived with Mrs. Glover; that she had seen Mr. Nunn in Glover's apartment, but that it was a general practice for people to visit the housing units of other tenants. A next door neighbor of Mrs. Glover, testified that she had never seen a man living in Mrs. Glover's apartment or seen a man with a key to the apartment. Another neighbor, testified that she never saw anyone other than two children live with Mrs. Glover. Mrs. Glover's daughter testified that her child and another grandchild lived with Mrs. Glover, and that no one else lived there; that she had gone by the apartment each day during her mother's absence and had never seen a man in the apartment; that she was the only one who had a key; that on one occasion she had asked Mr. Nunn

to help her move a piece of heavy furniture into the apartment.

The defendant called four residents of the project as witnesses. One stated that he saw Mr. Nunn "daily and nightly" at Mrs. Glover's apartment; that he saw his car in the early morning and 12:00 at night. A second witness testified that she saw Mr. Nunn leave Mrs. Glover's apartment at 5:00 A.M., come back and leave again; that she had seen Mr. Nunn at the apartment during the day when Mrs. Glover was not there; that she had seen him enter with a key; that she saw Mr. Nunn there 365 days a year since she moved into the project in 1967 but that she did not know if he slept there. A third witness testified that she had seen Mr. Nunn in Mrs. Glover's apartment "many times regular"; that his car was parked there just about all the time but that she did not know if he ever stayed the night. Mrs. Rosa Nunn testified that she was the wife of Mr. Nunn, that they were not divorced, though they no longer lived together; that she had seen her husband in Mrs. Glover's apartment daily; that she did not know if he spent the night there, and that he presently lives at Lipscomb.

4. Mrs. Glover contends that she could not have litigated the merits of the grounds for eviction in the state court proceedings. The district court, without citation of authority, held that she could have contested the merits of her case in state proceedings.

In determining whether there is a *constitutional* right to an *administrative* hearing prior to eviction, the availability

any event, any lack of due process was cured by the trial in the district court.

On appeal Mrs. Glover argues that she has a constitutional right not to be evicted from public housing without prior notification of the reason and an opportunity for a hearing in which she can confront her accusers and put on evidence in support of her position. In support of this contention, Mrs. Glover cites Escalera v. New York City Housing Authority, 2 Cir. 1970, 425 F.2d 853, and Caulder v. Durham Housing Authority, 4 Cir. 1970, 433 F.2d 998, as persuasive authority. These cases applied the teaching of Goldberg v. Kelly, 1970, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287, to eviction from public housing. Goldberg v. Kelly held that due process requires that before public assistance payments may be terminated the recipient is entitled to timely notice, a hearing with the opportunity to confront and cross-examine adverse witnesses, assistance of counsel, and an impartial decision-maker.

Because of intervening events we do not have to decide the constitutional issue asserted by Mrs. Glover. February 22, 1971, HUD issued a new circular (RHM 7465.9) [5] superseding the 1967 circular considered in Thorpe v. Housing Authority of Durham, 1969, 393 U.S. 268, 89 S.Ct. 518. This new regulation is obviously based on Goldberg v. Kelly, Escalera, and Caulder. The required procedures include a hearing before an impartial official or hearing panel concerning any disputed action or inaction by the housing authority adverse to the tenant's rights (3a); representation of tenants on any such panel established (3b); notice prior to hearing of the reasons or grounds for the authority's disposition of the tenant's complaint or grievance (3c); opportunity at such a hearing to call witnesses, cross-examine adverse witnesses and to be represented by counsel or another person of his choice (3e); notification in writing of the decision and reasons therefor (3f); and judicial review of the decision of the hearing panel (3g).

We think these requirements should apply to all cases still under consideration. Thus, in *Thorpe* the Court gave retroactive effect to the 1967 circular which was issued after the eviction proceedings were commenced. The Authority urges that *Thorpe* is distinguishable because there the tenant still resided in the housing at the time of the new regulations while here Mrs. Glover had vacated the housing. Mrs. Glover, however, left her apartment temporarily because of flooding. The Housing Authority had the locks on the apartment changed so that she could not return. Her absence therefore cannot be characterized as a voluntary relinquishment of her rights to the status quo ante.

The Authority argues further that there is no need for a Housing Authority hearing in this case because the district court conducted an evidentiary hearing. But we think this argument

---

of a judicial hearing would be a factor to consider. *See* Johnson v. Tamsberg, 4 Cir. 1970, 430 F.2d 1125. Any confusion about the present availability of a pre-eviction hearing in Alabama courts may result from confusion about public housing tenants' substantive rights. A constitutional requirement of a due process hearing would mean essentially that public housing tenants no longer have mere month-to-month tenancies, despite language of the lease agreements. Rather they would have the right to remain in public housing unless they breach reasonable rules or no longer meet the means requirement. Given such a redefinition of the tenant's rights, a state court might be willing to consider the grounds for eviction even though it would not have passed on the grounds for eviction if the tenant had only a true month-to-month tenancy. *See* McQueen v. Druker, D.Mass.1970, 317 F.Supp. 1122, 1131 (Wyzanski, J.).

This case does not raise the question of availability of state judicial remedies because we find the HUD regulations determinative.

5. See footnote 1.

misses the point that it is a hearing within the administrative framework to which Mrs. Glover is entitled. As this Court said about due process rights to a hearing in a case contesting the discharge of school teachers who asserted this was retaliation for an exercise of first amendment rights,

> The District Court hearing does not, in this case, supplant the necessity for employment by the board of appropriate procedures. * * * The localized, less formalized, less adversary atmosphere of the board is the best forum to adjudicate and ameliorate problems of teacher rehiring to the mutual acceptability, if not the full satisfaction, of board and teacher. Abdication to the courts may be the short way across, but it may be the long way around, as in this case. * * * The hearing which we require is one *nunc pro tunc*. Lucas is entitled to receive at this time the notice and hearing he was entitled to receive in the spring of 1968. Subsequent events do not deny him those rights nor may they affect the board's decision.

Lucas v. Chapman, 5 Cir. 1970, 430 F.2d 945, 948.

Pending a hearing in accordance with the applicable HUD regulations, Mrs. Glover is entitled to reinstatement in the public housing.

The judgment below is vacated, and the case is remanded to the district court with instructions that the court direct the Bessemer Housing Authority to provide Mrs. Glover with an opportunity to be reinstated in an apartment in the project. If the Authority is still of the view that Mrs. Glover violated her lease, the Authority must comply with the existing HUD regulations (RHM 7465.9) providing for notice, hearing, and other safeguards before eviction.

The costs on appeal shall be divided equally between the parties.