119 N.J. Super. 72 (1972)
290 A.2d 160
BEATRICE LEE, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, PLAINTIFF,
v.
HOUSING AUTHORITY OF THE CITY OF ELIZABETH, J. WILLIAM FARLEY, JR., IN HIS CAPACITY AS EXECUTIVE DIRECTOR OF THE HOUSING AUTHORITY OF THE CITY OF ELIZABETH, DEFENDANT.
Superior Court of New Jersey, District Court, Union County.
Decided April 24, 1972.
*73 Mr. David Einhorn, of the Union County Legal Services Corp., attorney for plaintiff.
Mr. Seymour S. Lichtenstein, attorney for defendant.
McKENZIE, J.D.C.
Plaintiff in a class action in behalf of herself and other tenants of defendant seeks to have this court declare as unconstitutional the lease used by defendant and presently in effect in the low-rent housing projects it manages. Defendant moved for summary judgment and plaintiff, agreeing that there was no issue of material fact, consented to have the matters decided as on cross-motions for summary judgment.
Defendant is a municipal housing authority organized pursuant to N.J.S.A. 55:14-1 et seq., and is subject to the provisions of the United States Housing Act, 42 U.S.C.A. § 1401 et seq. The latter provides that the United *74 States Housing Authority, now the Department of Housing and Urban Development (hereinafter HUD), may make such rules and regulations as may be necessary to carry out the provisions of the act. 42 U.S.C.A., § 1408.
Under this delegation of power HUD has issued certain regulations, or circulars, setting forth various provisions which are prohibited in low-income public housing leases such as those under consideration, and requiring other provisions to be included in such leases. Defendant concedes that its present form of lease may not comply with these circulars, but challenges the authority of HUD to impose such mandatory regulations on the local housing authorities in the administration of low-income housing programs.
Circular RHM 7465.6, issued August 10, 1970, prohibits certain unfair provisions in low-rent public housing project leases, including a waiver by the tenant of any notice or right of legal proceedings prior to eviction where the housing authority determines that the tenant has violated his lease. Defendant's form of lease provides in part:
5. The tenant hereby expressly waives all notice required by law to terminate his tenancy and all legal proceedings to recover possession of said premises, and agrees that upon any such termination the Management, at its option, may immediately reenter the premises and dispossess the Tenant without legal notice or the institution of any legal proceedings.
Circulars RHM 7465.8 and 7465.9, issued February 22, 1971, require that low-rent public housing project leases provide, among other things, the circumstances under which, for good cause only, the authority may terminate the lease, and a grievance procedure under which a tenant may obtain a hearing on any attempted termination of the lease or other action by the authority. Defendant's form of lease provides in part, without any further applicable provision:
The Management or the Tenant may terminate this tenancy at the end of any calendar month by giving the Tenant or the Management, as the case may be, one month's prior notice in writing.
*75 RHM 7465.6 further provides that the housing authority may not include in its lease an exculpatory clause relieving the landlord of liability for failure to provide utilities or other services, whether deliberate or negligent on the part of the housing authority. The lease in question provides:
The Management shall not be liable for failure to supply any of the above services, electrical current and water for any cause whatsoever.
RHM 7465.8 further provides that the lease shall set forth the responsibilities of the tenant in connection with his dwelling unit, and the limitations on his right to use of the same. Defendant's lease provides that the tenant agrees:
In the event that the number of occupants of said apartment exceeds, in the opinion of the Management, the number of persons that should reasonably be permitted to occupy the apartment, or, in the event that the total of the includable income of the occupants of the apartment is not in excess of the maximum rent now, or which may be permitted for continued occupancy of the apartment, the Tenant and all occupants thereof shall remove therefrom upon written notice from the Management to the Tenant, requesting the Tenant to vacate within a period of not less than one (1) month from the service of such notice, and which notice shall have as its termination date, a monthly rental due date.

* * * * * * * *
The Management may make any proper deductions from the income disclosed under this paragraph, or make any proper allowances in connection therewith, in accordance with the then effective rules and regulations of the Management, and its determination in the matter of income of the occupants shall be incontestable. [Emphasis added]
It is clear that the present lease form now in effect violates the regulations of HUD in each of the instances set forth.
Defendant asserts that HUD is without authority to require specific provisions in the leases of local housing authorities, relying on 42 U.S.C.A., § 1401, which provides in part:
It is the policy of the United States to vest in the local public housing agencies the maximum amount of responsibility in the administration *76 of the low-rent housing program, including responsibility for the establishment of rents and eligibility requirements (subject to the approval of the Authority), with due consideration to accomplishing the objectives of this chapter while effecting economies.
First, it should be recognized that there is a presumption in favor of the validity of administrative rules and regulations, and the burden of showing invalidity is on the party attaching it. National Customs Brokers & Forwarders Ass'n of America, Inc. v. Federal Maritime Comm'n, 380 U.S. 914, 85 S.Ct. 902, 13 L.Ed.2d 800 (1964).
Defendant relies principally on a recent decision of the United States District Court for the District of Nebraska, involving the Housing Authority of the City of Omaha. Housing Authority of City of Omaha, Nebraska v. United States Housing Authority, 54 F.R.D. 402 (1972). The court held that RHM 7465.58 and 7465.9 were an invalid exercise of the power of HUD in that they constituted interference in the day-to-day management by the local housing authorities, prohibited by § 1401. That decision, however, is not in line with the holdings of other courts on the subject, and the District Court itself stated that the requirements of the circulars might be otherwise mandated on due process grounds, but that that issue was not before the court.
The decisions which have upheld the HUD circulars have as their anchor point Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). There the United States Supreme Court held that public welfare recipients were entitled, as a matter of due process under the Fourteenth Amendment of the United States Constitution, to notice and an evidentiary hearing before their benefits could be terminated. The court stated:
* * * From its founding the Nation's basic commitment has been to foster the dignity and well-being of all persons within its borders. We have come to recognize that forces not within the control of the poor contribute to their poverty. This perception, against the background *77 of our traditions, has significantly influenced the development of the contemporary public assistance system. Welfare, by meeting the basic demands of subsistence, can help bring within the reach of the poor the same opportunities that are available to others to participate meaningfully in the life of the community. At the same time, welfare guards against the societal malaise that may flow from a widespread sense of unjustified frustration and insecurity. Public assistance, then, is not mere charity, but a means to `promote the general Welfare, and secure the Blessings of Liberty to ourselves and our Posterity.' The same governmental interests that counsel the provision of welfare, counsel as well its uninterrupted provision to those eligible to receive it; pretermination evidentiary hearings are indispensable to that end.
Defendant's tenants are the recipients of public benefits based on need, substantially the same as the recipients of direct benefit payments under consideration in Goldberg. Only persons earning under a stated income are eligible for housing from defendant, and the rent is determined in each individual's case by the amount of his income. To the extent that the rent so established is below the amount previously determined as the proportionate share of the project's overall expenses and carry charges allocated to that dwelling unit, the tenant's rent is subsidized by the Federal Government under the annual contributions contract. 42 U.S.C.A., § 1410.
The application to low-rent public housing tenants of the benefit of the due process requirements enumerated in Goldberg has already taken place in other jurisdictions. Escalera v. N.Y.C. Housing Authority, 425 F.2d 853 (2 Cir.1970); Davis v. Toledo Metropolitan Housing Authority, 311 F. Supp. 795 (N.D. Ohio 1970); Caulder v. Durham Housing Authority, 433 F. 2d 998 (4 Cir.1970); Brown v. Housing Authority of Milwaukee, 340 F. Supp. 114 (D.C.E.D. Wis. 1972).
In addition, the authority of HUD to issue regulations in the form of circulars, implementing the due process requirements of Goldberg, has been upheld in other cases. Glover v. Housing Authority of Bessemer, Ala., 444 F.2d 158 (5 Cir.1971); Chicago Housing Authority v. Harris, 49 Ill.2d 274, 275 N.E.2d 353 (Sup. Ct. 1971); Housing *78 Authority of Milwaukee v. Mosby, 53 Wis.2d 275, 192 N.W.2d 913 (Sup. Ct. 1972). See also, pre-dating Goldberg, the leading case of Thorpe v. Housing Authority of Durham, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969).
It is clear that local housing authorities are necessarily subject to greater restrictions than private landlords. Their goal is not financial profit but to provide housing to needy persons who otherwise might not be able to obtain adequate living quarters. The facilities which they manage are merely tools to be used to meet the public need for low-rent housing. This objective is thwarted if eligible tenants are wrongfully evicted; even the most undeserving and undesirable tenant is entitled to due process. See Ruffin v. Housing Authority of New Orleans, 301 F. Supp. 251 (E.D. La. 1969); Caulder v. Durham Housing Authority, supra.
If paragraph 5 of defendant's lease were literally enforced, plaintiff and other tenants could be evicted from their dwellings at any time without any notice whatsoever, and without the protection of any legal proceedings. To state the position of the tenants is sufficient to demonstrate the lack of due process and fundamental fairness accorded to them under the terms of the lease. Obviously, also, it is no answer that defendant housing authority, as a matter of policy, has refrained from exercising the broad powers which it has given itself under the lease.
Even if the lease did not deny a tenant the right to access to the courts, it would still offend due process principles, since, applying the holding of Goldberg, he is also entitled to an evidentiary hearing at the administrative level, before an impartial official or panel, including prior notice of the grounds for the action of the authority, the right to call and examine witnesses, the right to legal counsel, and a decision setting forth the reasons on which it is based. Glover v. Housing Authority of Bessemer, Ala. and Escalera v. N.Y.C. Housing Authority, supra.
Clearly, the lease form presently in use by defendant fails to conform with the requirements of the HUD Circulars *79 and the controlling concept of due process. This, therefore, declares the provisions cited to be unenforceable. The court's injunction issued January 7, 1972 will remain in effect until such time as a proper lease, embodying the provisions required by HUD, shall have replaced the present lease.
Summary judgment will therefore be entered on the first, second, third and fourth counts in favor of plaintiff. The disposition of the remaining count, involving the handling and disposition of security deposits, will await the outcome of a trial.