Louise **BROWN**, individually and on behalf of all other persons similarly situated, Plaintiffs-Appellees,

v.

The **HOUSING AUTHORITY OF** the **CITY OF MILWAUKEE** et al., Defendants-Appellants.

No. 72–1259.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 2, 1972.

Decided Dec. 8, 1972.

James B. Brennan, City Atty., Michael J. McCabe, Asst. City Atty., Milwaukee, Wis., for defendants-appellants.

Patricia D. McMahon, Milwaukee, Wis., for plaintiffs-appellees.

Before KILEY and SPRECHER, Circuit Judges, and CAMPBELL,* Senior District Judge.

SPRECHER, Circuit Judge.

Louise Brown brought an action on her own behalf and on behalf of all tenants in federally-assisted low-rent public housing projects owned and operated by the Housing Authority of the City of Milwaukee seeking declaratory and injunctive relief against termination of tenancies without compliance with certain required hearing procedures prior to the termination. The summary procedure used by the Authority was alleged to be in violation of circulars and regulations promulgated under the United States Housing Act of 1937 and to violate procedural guarantees secured by the due process clause of the Fourteenth Amendment of the United States Constitution. The district court granted plaintiff's motion for judgment on the pleadings, holding that the Housing Authority eviction procedure did not comply with requirements of due process and was in violation of valid regulations promulgated by the Department of Housing and Urban Development pursuant to authority given by the Housing Act of 1937. 340 F.Supp. 114 (E.D.Wis.1972). We agree that the Housing Authority eviction procedure is invalid under lawful HUD regulations. We therefore need not decide whether the procedure used by the Milwaukee Housing Authority also violates fundamental principles of due process. See Thorpe v. Housing Authority of the City of Durham, 393 U.S. 268, 283–284, 89 S.Ct. 518, 21 L. Ed.2d 474 (1969).

This action was begun following the action of the Housing Authority's agent who on August 9, 1971, served plaintiff

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

Brown with a "Notice to Tenant Terminating Tenancy," requiring her to vacate her apartment by September 30, 1971. The notice did not contain a written statement of the reasons for eviction, although Brown was apparently given an oral statement, and her subsequent request for a written reason was refused by the Housing Authority.

On February 22, 1971, well before Brown's eviction notice, the Department of Housing and Urban Development, Renewal and Housing Management division, issued HUD circular RHM 7465.9. This circular requires local housing authorities receiving federal funds to adopt grievance procedures incorporating certain standards set forth in the circular. These standards had been determined following meetings of representatives of local housing authorities, tenants, professional arbitrators, and other interested organizations. The stated purpose of the new regulations was to "improve management-tenant relationships and promote improved housing environment to the advantage of the low-rent public housing program thus implementing the national housing policy as expressed by Congress." In order to achieve this objective, each local housing authority was required to set up a grievance procedure in which, as a minimum, each tenant would be given an opportunity for a hearing before an impartial official or panel before the local housing authority takes any action adversely affecting a tenant's "rights, duties, welfare or status." At the hearing the tenant is to be afforded the right to present his side of the dispute, to bring in witnesses, to confront and cross-examine witnesses in appropriate circumstances, and to be represented by counsel or another person of his choice. Following a decision on the dispute, the parties are to be notified in writing of the decision and given the reasons and evidence relied upon in reaching the decision. The local housing authority is free to pursue its remedies following a decision in its favor and the tenant may seek appropriate relief.

The Milwaukee Housing Authority does not deny that it did not follow the procedure outlined in the circular in Brown's case or in any other case, but insists that it was not required to do so for several reasons. First, the Housing Authority insists that the circular is invalid because it exceeds the authority given HUD under the Housing Act of 1937, 50 Stat. 888, as amended 42 U.S.C. § 1401. Second, the defendant argues that RHM 7465.9 is not binding upon it because HUD failed to comply with the requirements of the Administrative Procedure Act, 5 U.S.C. § 553(b), which provides that notice of proposed rulemaking shall be published in the Federal Register. Finally, it is argued that even if the HUD circular is valid and binding, it does not require an administrative hearing prior to eviction.

I

The defendant Housing Authority's argument that HUD circular RHM 7465.9 exceeds HUD's authority under the Housing Act of 1937 is based on that part of 42 U.S.C. § 1401 which states: "It is the policy of the United States to vest in the local public housing agencies the maximum amount of responsibility in the administration of the low-rent housing program, including responsibility for the establishment of rents and eligibility requirements (subject to the approval of . . . [HUD]), with due consideration to accomplishing the objectives of this chapter while effecting economies." The Supreme Court considered this provision in Thorpe v. Housing Authority of the City of Durham, *supra*, determining the validity of an earlier HUD circular requiring that a tenant be told the reasons for his eviction and given an opportunity to reply, and held that the HUD circular was not inconsistent with that policy and had only a minimal effect upon the basic lease agreement between the Housing Authority and its tenants. The Housing Authority argues that this circular is distinguishable because it "goes to the root of every local Authority's

relations with its tenants and constitutes a far greater encroachment upon every local Authority's powers and responsibilities" than did the circular approved in *Thorpe*. We do not agree.

This circular was issued pursuant to the broad rule-making authority given HUD under 42 U.S.C. § 1408, which authorizes HUD to "make, amend, and rescind such rules and regulations as may be necessary to carry out the provisions of this chapter." There can be no doubt that the circular in question bears a reasonable relation to this authority. Section 1401 states that it is the policy of the United States "to promote the general welfare of the Nation by employing its funds and credit, as provided in this chapter, to assist the several States and their political subdivisions . . . to remedy the unsafe and insanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of low income. . . ." In *Thorpe, supra*, 393 U.S. at 281, 89 S.Ct. at 525, the Supreme Court stated:

> "One of the specific purposes of the federal housing acts is to provide 'a decent home and a suitable living environment for every American family' [42 U.S.C. § 1441] that lacks the financial means of providing such a home without governmental aid. A procedure requiring housing authorities to explain why they are evicting a tenant who is apparently among those people in need of such such assistance certainly furthers this goal." ·

Additional authority for the HUD circular is contained in 42 U.S.C. § 1410(a), which provides that HUD "may make annual contributions to public housing agencies to assist in achieving and maintaining the low-rent character of their housing projects." The Annual Contributions Contract, which defines the contractual relationship between HUD and the local housing authority, provides pursuant to this provision:

> Sec. 101: Each Project . . . will be developed and administered to promote serviceability, efficiency, econo-

my, and to achieve the economic and social well-being and advancement of the tenants thereof.

> \* \* \* \* \* \*

> Sec. 201: The Local Authority shall at all times operate each Project 1) solely for the purpose of providing decent, safe, and sanitary dwellings . . ., 2) in such manner as to promote serviceability, efficiency, economy, and stability, and 3) in such manner as to achieve the economic and social well-being of the tenants thereof.

> \* \* \* \* \* \*

> Sec. 203: The Local Authority shall not permit any family to occupy a dwelling in any Project except pursuant to a written lease . . . which lease shall provide that the Local Authority shall not terminate the tenancy other than for violation of the terms of the lease or other good cause.

The HUD circular promotes the policies outlined in the federal housing act and the contributions contract in two ways. First, as the Supreme Court noted in *Thorpe, supra*, a procedure designed to protect a tenant's right to continued tenancy clearly furthers the goal of providing a decent home to Americans who lack the financial means to otherwise live in a suitable living environment. Second, the hearing procedure is reasonably related to the protection of HUD's financial contribution to the project. This relationship is noted in the background paragraph of RHM 7465.9, which states:

> "In recent years, it has become more and more apparent that many of the problems faced by management and tenants in low-rent public housing have resulted in friction and strain in tenant-management relations and in litigation, costly to both management and tenants; much of which might have been avoided had some kind of procedure been available for grievances to be aired before an impartial individual or panel."

Others have noted the relationship between proper management and the fi-

nancial success of a housing project. *See* Mulvihill, "Problems in Management of Public Housing," 35 Temp.L.Q. 163 (1962). An harmonious landlord-tenant relationship is obviously in the interests of those who have a financial state in the success of the project.[1]

The Housing Authority's argument that the sentence in section 1401 vesting "the maximum amount of responsibility in the administration of the low-rent housing program" in the local housing authority precludes HUD's mandating a grievance procedure such as outlined in HUD circular RHM 7465.9 is also belied by the further clause in that sentence which subjects the local housing authority's right to establish rents and eligibility requirements to HUD's approval. That is essentially what has occurred here. HUD, in its capacity as the final authority on eligibility requirements, has implemented a policy which furthers the goals of the housing act and protects its own interest in seeking to provide suitable housing for every American.

Finally, we reject the notion that the grievance procedure required by the HUD circular alters the basic lease agreement between the Authority and its tenants. The Annual Contributions Contract between HUD and the Authority requires that each local authority negotiate a written lease with its tenants "which lease shall provide that the Local Authority shall not terminate the tenancy other than for violation of the terms of the lease or other good cause." The circular challenged here merely protects the tenant's right to continued tenancy in the absence of good cause for termination of the lease.[2]

We conclude that HUD circular RHM 7465.9 is well within the broad rule-making authority vested in HUD to further the goals of the Housing Act of 1937. *Accord,* Housing Authority of the City of Omaha v. United States Housing Authority, 468 F.2d 1 (8th Cir. 1972); Chicago Housing Authority v. Harris, 49 Ill.2d 274, 275 N.E.2d 353 (1971). *See also* Glover v. Housing Authority of the City of Bessemer, 444 F.2d 158 (5th Cir. 1971); Housing Authority of the City of Milwaukee, v. Mosby, 53 Wis.2d 275, 192 N.W.2d 913 (1972).

## II

The HUD circular challenged here was promulgated without compliance with 5 U.S.C. § 553(b), the general notice provision of the Administrative Procedure Act. Plaintiff argues that compliance with this provision was not required because defendants had actual notice of the proposed regulation.[3] We need not decide this question because we agree with the United States, which

---

1. 42 U.S.C. § 1410(c) provides that HUD's financial contribution can vary with the financial success of the housing authority.

2. We reject the Housing Authority's argument that the circular violates the Housing Authority's rights under the due process clause of the Fifth Amendment by authorizing HUD to repudiate its obligations under the annual contributions contract, for similar reasons. *See* Thorpe v. Housing Authority of the City of Durham, *supra,* 393 U.S. at 278–279, 89 S.Ct. 518.

3. 5 U.S.C. § 553(b) requires publication of general notice of proposed rule-making in the Federal Register "unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law." The defendants did not deny that they had notice of the proposed circular. The procedure leading up to the standards promulgated in the HUD circular is strong evidence that the defendants did have such notice. The meetings which culminated in the grievance procedure outlined in the HUD circular began in December, 1969. At the first meeting, an "ad hoc" task force, consisting of representatives of the National Association of Housing and Redevelopment Officials (NAHRO), which is the national representative for member housing authorities across the nation, representatives of the National Tenant Organization (NTO), and others, was established to develop a model lease and grievance procedure. After each meeting of this task force, drafts were prepared by HUD and sent to NTO and NAHRO for circulation to their members for comment.

filed a brief as amicus curiae, that the exception to the notice provision contained in 5 U.S.C. § 553(a) is applicable here. Section 553(a) provides, in part, that:

> "This section applies . . . except to the extent that there is involved—
>
> \*    \*    \*    \*    \*    \*
>
> (2) a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts."

HUD circular RHM 7465.9 was promulgated to supplement the Annual Contributions Contract between HUD and the local housing authority. *See* Thorpe v. Housing Authority of the City of Durham, *supra*, 393 U.S. at 274–275, 89 S. Ct. 518. It is therefore specifically exempted from the notice provisions of the APA as "a matter relating to . . . contracts." Chicago Housing Authority v. Harris, *supra*, 275 N.E.2d at 355.

The defendant argues that the contract exemption applies only where the agency is acting in its "proprietary" capacity as an individual citizen concerned with its own property, funds or contracts. However, as the court in Housing Authority of the City of Omaha v. United States Housing Authority, *supra*, 468 F.2d at 9, stated, the Annual Contributions Contract does represent a governmental proprietary interest "in that it effectuates the government's stewardship over public housing projects which are purchased with public funds."

Two recent cases decided by the First and Second Circuits involved similar problems under Section 221 of the National Housing Act, 12 U.S.C. § 1715*l*. Both courts held that the rule-making procedures of the APA did not apply because of the exception in Section 553(a) for a matter relating to agency loans, grants, benefits or contracts. Langevin v. Chenango Court, Inc., 447 F.2d 296, 300 (2d Cir. 1971); Hahn v. Gottlieb, 430 F.2d 1243, 1247 n. 4 (1st Cir. 1970).

Inasmuch as the notice provision of the APA is inapplicable to the HUD circular, the grievance procedure contained in the circular was lawfully promulgated and is binding upon the defendant Housing Authority.

### III

The Milwaukee Housing Authority argues that even if the HUD circular is valid and binding it does not require an administrative hearing. Focusing on the language of the circular which calls for a hearing before an "impartial official or a hearing panel," the Authority insists that a hearing before a state judge in an action for unlawful detainer sufficiently complies with the requirements of the circular.

This argument ignores the fact that the Wisconsin Supreme Court has itself held that the Wisconsin unlawful detainer procedure does not comply with the mandates of the HUD circular. In Housing Authority of the City of Milwaukee v. Mosby, *supra*, a tenant evicted from a housing project following a judicial hearing pursuant to the state unlawful detainer statute, Wis.Stat.Ann. § 291.07 appealed on the ground, among others, that the promulgation of HUD circular RHM 7465.9 required that she be given an administrative hearing. The Wisconsin Supreme Court agreed, stating:

> "[The circular] provides for an administrative method of advising tenants of violations and making factual determinations of whether such violations exist and whether they are of such nature as to require eviction. It also provides a means whereby a neutral person or body of persons can attempt to discuss the problems with the objective of saving the tenancy. Eviction is hardly consistent with public interest in providing housing for low income persons. . . . We conclude that the hearing requirement of the HUD circular of February 22, 1971, is valid and mandatory upon the housing authority." 192 N.W.2d at 917.

We agree with the Wisconsin Supreme Court that a state judicial action for unlawful detainer does not compy with the grievance procedure outlined in the HUD circular. *Accord,* Glover v. Housing Authority of the City of Bessemer, *supra,* 444 F.2d at 162.

### IV

The final argument in this appeal relates to the propriety of a class action in this case. The district court held that the action was properly maintainable as a class action under Rule 23(b)(2), Federal Rules of Civil Procedure. The defendant Housing Authority insists that a class action is not proper because not all housing projects owned and operated by the Housing Authority are federally-aided and the class combined tenants terminated for nonpayment of rent with tenants terminated for good cause.

The district court did not in terms limit the class to those tenants living in federally-aided low-income public housing. However, the very nature of its decision, applying the HUD circular to the tenant class, indicates that the court intended to include only tenants in federally-aided public housing. The pleadings and briefs also indicate that no relief was sought for tenants in low-income housing which does not receive federal aid.

Neither does the failure of the district court to specify whether the class included tenants terminated for nonpayment of rent defeat the class action. Although the HUD circular held binding upon the Housing Authority certainly contemplates that a hearing will be held in cases in which a tenancy is sought to be terminated on account of the nonpayment of rent,[4] plaintiff's complaint is limited to tenants whose leases may be terminated for "good cause." Complaint, paragraphs 4 and 10. Thus, although we see no reason why the class could not have been drawn to include all federally-aided public housing tenants in Milwaukee,[5] the fact that it was not does not affect the validity of the class action.

The decision of the district court is affirmed.

Affirmed.

---

4. See HUD circular RHM 7465.9, appendix 1, "Model Grievance Procedure," paragraph 5(d). See also HUD circular RHM 7465.8, appendix 1, "Model Lease Form," paragraph 10, which requires a 30-day notice prior to termination for all causes, including the nonpayment of rent.

5. See Wheeler v. Montgomery, 397 U.S. 280, 90 S.Ct. 1026, 25 L.Ed.2d 307 (1970); Escalera v. New York City Housing Authority, 425 F.2d 853, 867 (2d Cir.), cert. denied, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970).