Lionell McCRAY, Plaintiff,

v.

Al GOOD and H. B. Langford, Jr., Defendants.

Civ. A. No. 73-G-56.

United States District Court, S. D. Texas, Galveston Division.

Oct. 30, 1974.

Henry M. Rosenblum, Rosenthal, Cohen, Rosenblum & Co., Houston, Tex., for plaintiff.

C. M. Gregg, Texas City, Tex., for defendants.

## MEMORANDUM OPINION

NOEL, District Judge.

The plaintiff in this case is a dispossessed tenant of the Texas City Housing Authority (hereinafter called the Housing Authority or TCHA). The defendants are the Executive Director and Chairman of the Board of TCHA who by virtue of their offices, are responsible for establishing and enforcing the policies of the Housing Authority. Plaintiff calls these defendants to account for alleged defects in the procedure by which he was evicted. The following facts, which are essentially undisputed, provide the background for this controversy.

TCHA was created by local authorities to provide low-cost public housing for the economically disadvantaged. Minimal monthly rentals are assessed, under written lease agreements, according to the ability to pay of and the number of dependents in residence with each tenant. The budget of the Housing Authority is supplemented by federal funds administered through the United States Department of Housing and Urban Development (hereinafter called HUD). In return for federal assistance, TCHA agreed to abide by all applicable HUD regulations.

Plaintiff became a tenant of a TCHA apartment in July of 1965. On numerous occasions plaintiff became delinquent in his rental payments. TCHA officials repeatedly warned plaintiff that continued recalcitrance in paying his rent rendered him subject to ouster. The Housing Authority tendered written notice to plaintiff that eviction proceedings would be commenced if the rents due from plaintiff were not paid by a stated time. Plaintiff remained in arrears past the date set out in the notice and on February 12, 1973 TCHA brought an action for forcible entry and detainer in the Justice Court, Precinct No. 5 of Galveston County, Texas pursuant to Vernon's Tex.Rev.Civ.Stat.Ann., Article 3973.

At the hearing before the Justice Court, Mr. McCray maintained that the action of the Housing Authority was the result of malice toward him caused by his active participation in the formation and leadership of a TCHA "tenant's committee". The Justice Court ruled that Mr. McCray's breach of the lease entitled TCHA to a writ of restitution. This ruling resulted in an Order of Eviction being entered on February 27, 1973 and no appeal therefrom was taken.

Plaintiff now brings this action under 42 U.S.C. § 1983 challenging the procedure by which he was evicted. Plaintiff asserts that TCHA failed to comply with certain procedures imposed on it by HUD and that TCHA did not satisfy the requirements of constitutional due process.

As noted above, federal financing of the Housing Authority is contingent upon compliance with certain HUD regulations. On February 22, 1971 HUD issued circular RHM 7465.8 on the subject of "Requirements and Recommendations To Be Reflected in Tenant Dwelling Leases for Low-Rent Housing Projects" and circular RHM 7465.9 on the subject of "Grievance Procedures in Low-Rent Public Housing Projects".

The first of these (hereinafter called Circular 8) requires tenant dwelling leases to contain, *inter alia*, written provisions for lease terminations. The second circular (hereinafter called Circular 9) requires certain grievance procedures to be employed prior to any lease termination. TCHA admits that the plaintiff did not receive the benefits of either of these circulars, but correctly denies that the plaintiff was entitled to such benefits.

■ The first reason the circulars do not avail the plaintiff is found in the action taken in Housing Authority of the City of Omaha, Nebraska v. United States Housing Authority, 54 F.R.D. 402 (D.Neb.), rev'd 468 F.2d 1 (8th Cir. 1972), cert. denied, 410 U.S. 927, 93 S. Ct. 1360, 35 L.Ed.2d 588 (1973). In that case individual housing authorities brought a class action to enjoin the application and enforcement of the very circulars here in question. The class of plaintiffs apparently included all local housing authorities in the nation who were covered by Circulars 8 and 9. Thus, TCHA was a party to the judgment of the Nebraska District Court which invalidated the circulars on February 10, 1972. During the pendency of the appeal from the order enjoining the implementation of Circulars 8 and 9, requests for a stay of the order were denied by the District Court and by the United States Court of Appeals for the Eighth Circuit. On September 28, 1972, however, the Court of Appeals sustained the validity of the circulars and reversed the trial court. The mandate of the Court of Appeals remanding the case to the District Court was stayed on October 31, 1972 pending an appeal to the United States Supreme Court. [Cf. Mesabi Iron Co. v. Reserve Mining Co., 268 F.2d 782 (8th Cir. 1959).] Certiorari was denied by the Supreme Court on February 20, 1973. Accordingly, the Court of Appeals issued its mandate on March 5, 1973 and the District Court entered a judgment upholding the validity of the circulars on March 28, 1973.

From this chronology it appears that when TCHA took action to evict Mr. McCray in February of 1973, the implementation of Circulars 8 and 9 by TCHA (and all similar housing authorities) was enjoined by a valid order of the Nebraska District Court. Thus, the procedures used by the Housing Authority in evicting Mr. McCray cannot be held infirm for noncompliance with the circulars.

■ The second reason Circular 8 cannot avail the plaintiff arises from the fact that Circular 8 was not intended to modify by its own force leases executed prior to its promulgation. A supplemental HUD circular, RHM 465.1 Supplement 2, provides in paragraph 3(a) that leases used by local housing authorities which do not conform to the requirements of Circular 8 should be replaced with new leases which would so conform. At the time in question, TCHA had not amended its lease agreement with this plaintiff and he cannot, therefore, complain of the Housing Authority's non-compliance with Circular 8.

■ There is also a second reason Circular 9 cannot avail the plaintiff. The grievance procedures outlined in Circular 9 (which, unlike Circular 8, is self-executing) were not employed by TCHA in this case. However, plaintiff candidly admits that he never presented a grievance to the Housing Authority nor sought a hearing under any grievance procedure. The first notice these defendants received of plaintiff's interest in any rights he may have had under Circular 9 was at the hearing before this Court on plaintiff's application for a preliminary injunction. Plaintiff will not now be heard to complain of the insufficiency of procedures he neglected to invoke in a timely manner.

■ The foregoing disposes of plaintiff's claim to the extent that it is based on a denial of administrative due process. Plaintiff also complains that the state court eviction procedures do not meet the standards of constitutional due

process.[1] That the Constitution imposes certain minimum requirements of due process on tenant evictions in a case such as this is clear. Thorpe v. Housing Authority of the City of Durham, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969). Of course, "[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." Cafeteria & Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886, 81 S. Ct. 1743, 6 L.Ed.2d 1230 (1961); cited in this context in Caulder v. Durham Housing Authority, 433 F.2d 998 (4th Cir. 1970). But this plaintiff was given full and timely written notice of the reasons for his eviction and a complete opportunity to be heard with counsel before an impartial tribunal in the state Justice Court before he was evicted. This was the process which was due.

For the foregoing reasons, there is no genuine issue as to any material fact in this case and the defendants are entitled to a judgment in their favor as a matter of law.

---

1. Because this claim is based directly on the Constitution, this case is not within the rule of Brown v. Housing Authority of the City of Milwaukee, 471 F.2d 63 (7th Cir. 1972) and Glover v. Housing Authority of the City of Bessemer, Alabama, 444 F.2d 158 (5th Cir. 1971). Those cases held that a hearing before a court could not satisfy a HUD-imposed requirement of a hearing at the administrative level, not that a hearing before a court was insufficient process under the Constitution.