**Barbara J. CRAWFORD et al.**

v.

**METROPOLITAN DEVELOPMENT AND HOUSING AGENCY et al.**

Civ. No. 7097.

United States District Court,
M. D. Tennessee,
Nashville Division.

March 9, 1976.

ment was unlawfully refusing to adequately fund the low cost housing program under the Housing Act of 1937 through the annual contribution contracts with local public housing agencies, including the Metropolitan Development and Housing Agency.

On October 11, 1973, the Metropolitan Development and Housing Agency and Jack D. Herrington answered plaintiffs' complaint, and on April 19, 1974, filed a motion to be allowed to file a cross-complaint against the Department of Housing and Urban Development and the Secretary of Housing and Urban Development. On April 19, 1974, the motion was granted and a cross-complaint was filed, alleging that the Department of Housing and Urban Development and the Secretary were unlawfully refusing to provide the Metropolitan Development and Housing Agency with the necessary operating subsidy to operate the low cost housing program without rent ranges.

The Department of Housing and Urban Development and the Secretary filed answers to the complaint and cross-complaint denying any violations of the Housing Act of 1937 and denying that plaintiffs or cross-plaintiffs were entitled to relief.

Trial of this case had been stayed pending the outcome of a case in this Circuit, *Fletcher, et al. v. Housing Authority of Louisville, et al.*, which on November 15, 1974, was remanded by the United States Supreme Court to the United States Court of Appeals for the Sixth Circuit for reconsideration in light of the enactment of Public Law 93–383, the Housing and Community Development Act of 1974. In the *Fletcher* case, the United States District Court for the Western District of Kentucky had upheld a rent range policy in low cost public housing. On appeal, the Court of Appeals reversed. 491 F.2d 793 (6th Cir. 1974).

Ashley T. Wiltshire, Jr., Legal Services of Nashville, Inc., Nashville, Tenn., for plaintiffs.

Joe B. Brown, Asst. U. S. Atty., Nashville, Tenn., for HUD.

Joseph L. Lackey, Jr., Nashville, Tenn., for Metro. Development and Housing.

## MEMORANDUM

MORTON, District Judge.

This civil action was filed on July 27, 1973, by plaintiffs Barbara Crawford, Debra Faye Henderson, and Naomi Watson, individually and on behalf of all others similarly situated, against the Metropolitan Development and Housing Agency, and Jack D. Herrington, Executive Director, and the United States Department of Housing and Urban Development and James T. Lynn, Secretary of the Department of Housing and Urban Development.[1] Plaintiffs alleged that certain policies and practices of the defendants dealing with rent ranges in low cost housing violated the Housing Act of 1937, as amended, the Fourteenth Amendment to the Constitution of the United States, and the Civil Rights Act of 1970. Plaintiffs also alleged that the Department of Housing and Urban Develop-

1. Carla A. Hills is now the Secretary of Housing and Urban Development and is substituted as party defendant.

On October 24, 1975, the Court of Appeals issued its decision upon reconsideration of the case and reinstated its earlier decision invalidating the rent range policy. The Court did not consider the Housing and Community Development Act of 1974 applicable because the Secretary of Housing and Urban Development had not promulgated implementing regulations under the Act. The Court did not render an opinion as to how the Act would affect its decision if implementing regulations had been adopted. See *Fletcher, et al. v. Housing Authority of Louisville*, 525 F.2d 532 (Sixth Circuit, 1975).

Based on the October 24, 1975 decision in the *Fletcher* case, plaintiffs have moved the court for summary judgment in their favor.

Plaintiffs' motion was heard by the court on December 9, 1975. Plaintiffs moved the court to dismiss the seventh and eighth causes of action and the fourth, fifth and sixth prayers for relief stated in their complaint. Defendant Metropolitan Development and Housing Agency moved to dismiss its cross-claim against the Department of Housing and Urban Development. These claims dealt with the allegations that defendant Department of Housing and Urban Development was in violation of the Housing Act of 1937, as amended, by refusing to provide the defendant Metropolitan Development and Housing Agency with a sufficient operating subsidy that rent range policies would not be required.

At the hearing on plaintiffs' motion for summary judgment, certain factual matters were stipulated, which are discussed below, and the case was submitted to the court for decision.

When this civil action was filed, defendant Metropolitan Development and Housing Agency had in effect a rent range policy for tenants in low cost public housing constructed pursuant to the Housing Act of 1937, as amended. The rent range policy was adopted on October 10, 1972, in accordance with Circular HM 7465.12, an advisory circular published by the Department of Housing and Urban Development and furnished to local public agencies administering low cost public housing.

Circular HM 7465.12 provided that local public agencies could establish rent ranges from $0/month rent to the maximum rent allowed per month in low cost public housing, and that the ranges could result in maximum percentages of housing units being occupied by families or persons paying the lowest ranges of rents. The purpose of such rent ranges was to avoid the financial result of low cost public housing being principally occupied by persons paying very little or no rent and to contribute to restoring financial solvency in local public agencies.

The rent ranges established by MDHA are as follows:

| Rent | Percent of Families | No. of Units |
|---|---|---|
| $ 0–10 | 10% | 620 |
| $11–20 | 12% | 744 |
| $21–30 | 18% | 1116 |
| $31–40 | 14% | 868 |
| $41–50 | 11% | 682 |
| $51–60 | 10% | 620 |
| $61–70 | 15% | 930 |
| over $70 | 10% | 620 |

Defendant MDHA and defendant Herrington have candidly admitted that they "give priority consideration to those eligible applicants who can pay the largest rent." Plaintiffs' Exhibit 4, P.I.; Affidavits of Jewell Benson and Deneese Foster filed herein June 19, 1975, in support of their Motion for Preliminary Injunction; Affidavit of Joyce D. Williams dated November 9, 1973, and filed herein March 1, 1975 in support of Plaintiffs' Motion for Summary Judgment. This priority consideration makes a prospective tenant's ability to pay rent a key factor in determining which eligible applicants to MDHA would receive federally aided public housing and in what order.

The discrimination against applicants in the rent ranges between $0 and $30 emerges from these figures submitted by defendant MDHA in response to interrogatories from the plaintiffs:

| Rent Range | Number of Applicants[2] | Percentage of Applicants[3] | Number of Applicants Admitted[4] | Percentage of Applicants Admitted[5] |
|---|---|---|---|---|
| $ 0–10 | 45 | 4.9% | 63 | 8.4% |
| 11–20 | 260 | 28.7% | 74 | 9.9% |
| 21–30 | 177 | 19.5% | 80 | 10.7% |
| 31–40 | 105 | 11.6% | 98 | 13.0% |
| 41–50 | 86 | 9.5% | 105 | 14.0% |
| 51–60 | 70 | 7.7% | 99 | 13.2% |
| 61–70 | 50 | 5.5% | 98 | 13.0% |
| 70 and over | 112 | 12.3% | 134 | 17.8% |

These representative figures demonstrate that though the three lowest ranges contain 53.1% of the applicants, from them came only 29% of the admissions. The discrimination emerges even more strongly from a comparison of the number and percentage of applications on file in each range in January 1974 with number and percentage of units occupied by tenants in each of the rent ranges in December 1973 and the projected percentage of units in each range:

| Rent Range | Number of Applications on File[6] | Percentage of Applications on File[7] | Number of Units Occupied[8] | Percentage of Units Occupied[9] | Projected Percentage of Units[10] |
|---|---|---|---|---|---|
| $ 0–10 | 40 | 3.7% | 719 | 11.7% | 10% |
| 11–20 | 422 | 40.0% | 774 | 12.6% | 12% |
| 21–30 | 338 | 32.1% | 1153 | 18.8% | 18% |
| 31–40 | 151 | 14.3% | 812 | 13.3% | 14% |
| 41–50 | 59 | 5.6% | 636 | 10.4% | 11% |
| 51–60 | 17 | 1.6% | 481 | 6.8% | 10% |
| 61–70 | 11 | 1.0% | 632 | 10.3% | 15% |
| 71 and over | 16 | 1.5% | 908 | 14.8% | 10% |

Though 75.8% of all applications on file are from applicants within the three lowest ranges, in order to reach its goal, defendant MDHA needed to actually reduce the number of units held by applicants in those ranges by 3.1%. Thus, the applicants in these ranges would face much longer delays in obtaining public housing as compared with more affluent applicants.

At final hearing, the parties stipulated that there were more than 400 applicants for low rent public housing then on the waiting list of defendant MDHA and that of these 29 are within the lowest rent range ($0–$10) and 78 could pay up to $15 rent and thus fall within the second lowest rent range ($11–$20). These are the people most severely prejudiced by the implementation of the rent ranges.

The parties further stipulated that prior to the implementation of the rent range system the normal waiting time for appli-

2. These figures are in response to Interrogatory number 15 submitted January 1974, and as defendant MDHA admits are "somewhat incomplete"; only 905 of 1,864 applicants were classified in these figures: the dates are October 1972 – September 1973, instead of January 1974 as requested. These figures were tendered by defendant MDHA as representative and are accepted as such.

3. These figures are calculations from defendant's figures.

4. Response to Interrogatory 16.

5. Response to Interrogatory 17.

6. Response to Interrogatory 18.

7. Calculation based on defendant's figures.

8. Response to Interrogatory 19.

9. Calculation based on defendant's figures.

10. Response to Interrogatory 20.

cants did not exceed six months, but that there are now approximately 35 applicants in the two lowest rent ranges who have been waiting more than a year for housing—because of the effect of the rent range system.

The rent ranges established by MDHA were similar to the ranges established by the Housing Authority of Louisville, which were the subject of litigation in *Fletcher, et al. v. Housing Authority of Louisville, et al., supra.*

On August 22, 1974, The Housing and Community Development Act of 1974 was enacted. Among other things, the Act authorized the adoption of tenant selection criteria which include income. Title 42, United States Code, Section 1437d. The Act also provided that it would become effective at such time or times as the Secretary of Housing and Urban Development should prescribe, but not later than 18 months after the date of enactment.

On February 18, 1975, the Department of Housing and Urban Development issued a notice to local public agencies, HM 75–9, which revoked Circular 7465.12. On August 8, 1975, the Secretary of Housing and Urban Development published an Interim Rule under the Housing and Community Development Act of 1974, which Interim Rule was to be effective upon publication, and which would make effective the provisions of the Act dealing with tenant selection criteria. 40 Federal Register, 33445. The prefacing notice includes the following statement: "Publication of this interim rule as a notice of proposed rule making would result in the establishment of waiting lists which are inconsistent with the Congressional policy expressed in the Housing and Community Development Act of 1974 and which must be implemented no later than eighteen months after August 22, 1974. Therefore, the Secretary has determined that this Subpart shall be effective upon publication."

On September 26, 1975, the Secretary of Housing and Urban Development published a second Interim Rule, also effective on publication, which implemented further provisions of the Housing and Community Development Act of 1974, including the provisions establishing the percentages of very low income families to be provided housing in low cost housing projects. 40 Federal Register, 44323. The prefacing notice to this Interim Rule includes the following language: "Because the financial positions of PHA's requires that their rental income be augmented as provided in the Housing and Community Development Act of 1974 as soon as practicable, this interim rule is effective September 26, 1975."

It is pertinent to note that the Interim Rules had prospective effect only.

It was not seriously disputed that if the provisions of the Housing and Community Development Act of 1974 were not effective on December 9, 1975, then the rent range system maintained by the Metropolitan Development and Housing Agency would be invalid, based upon the decision of the United States Court of Appeals for the Sixth Circuit in *Fletcher, et al. v. Housing Authority of Louisville, et al., supra.*

Plaintiffs have challenged the Interim Rules adopted by the Secretary of Housing and Urban Development as having been improperly promulgated and thus of no legal effect. Thus a narrow issue here is whether the above-described portions of the Housing and Community Development Act of 1974 became effective upon publication of the Interim Rules on August 8, 1975, and September 26, 1975.

The Administrative Procedure Act, Title 5, United States Code, Section 553, sets forth procedures for rule making by administrative agencies. There are two exceptions to applicability generally: to the extent that there is involved a military or foreign affairs function of the United States; or to the extent that there is involved a matter relating to agency management or personnel or to public property, loans, grants, benefits or contracts. Title 5, United States Code, Section 553(a).

Otherwise, the procedures set forth in subsection (b), which include publication of notice of proposed rule making in the Federal Register and giving interested persons an opportunity to comment, must be fol-

lowed by interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice, or when the agency for good cause finds (and incorporates the finding and a brief statement of the reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest. Title 5, United States Code, Section 553(b).

■ The Housing and Community Development Act of 1974 was to become effective "at such time or times as the Secretary should prescribe." The provisions which were designated as effective August 8, 1975, upon publication of the Interim Rule deal with tenant selection criteria utilized by local housing agencies pursuant to the contracts for annual contributions. See Title 42, United States Code, Section 1437d(c)(4)(A). Thus, the Interim Rule falls within the exception to the rule making provisions of the Administrative Procedure Act for matters relating to contracts, and the lack of notice of proposed rule making does not render the rule invalid. See *Brown v. Housing Authority of the City of Milwaukee*, 471 F.2d 63, at 68 (7th Cir. 1972).

Alternatively, if the Interim Rule did not fall within the exception for matters relating to contracts, the Secretary found that the rule should be immediately effective and published the reasons therefor in the preface to the rule.

■■ Therefore, the court finds that the portions of the Housing and Community Development Act of 1974 authorizing establishment of tenant selection criteria was effective as of August 8, 1975.

However, the above determination does not dispose of the asserted rights of the parties from July 27, 1973, to August 8, 1975. This court is bound by the determination of the Sixth Circuit Court of Appeals of *Fletcher, et al. v. Housing Authority of Louisville, et al.* (on remand from the Supreme Court).

■ The court determines that a class action is proper, composed of those persons who filed applications for housing prior to August 8, 1975. The requisites of Rule 23 are met.

It is obvious that those persons who fall within the class, approximately 400 [11], who have been illegally deprived of decent housing have been and continue to be irreparably harmed. They have been deprived of housing. There is no assertion by defendants that if they were presently housed, they would be dispossessed under the new rent schedules. Thus, to place them in the condition to which they are entitled, it is necessary that defendant housing authority give them first choice on units as they become available in the degree in which they would have been housed absent the illegal rent classification restrictions.

## CONCLUSIONS OF LAW

(1) The court has jurisdiction over the parties and the subject matter of this action.

(2) This action may be maintained as a class action. The class consists of applicants for low rent public housing with defendant MDHA who otherwise qualify for admission to public housing but whose applications are penalized because of their low income.

■ (3) For the reasons set forth by the Court of Appeals for the Sixth Circuit in *Fletcher v. Housing Authority of Louisville*, 491 F.2d 793 (6th Cir. 1974) cert. granted, judgment vacated and remanded 419 U.S. 812, 95 S.Ct. 27, 42 L.Ed.2d 39 (1974), judgment reinstated 525 F.2d 532 (6th Cir. 1975), the discriminatory rent range system of tenant selection adopted by the defendant MDHA on October 10, 1972, subsequently implemented and continuing in effect until August 8, 1975, is not consistent with the National Housing Act and constitutes an abuse of discretion under the Act.

(4) The plaintiffs' motion to amend filed herein on August 18, 1975, should be granted and the seventh and eighth causes of action are dismissed.

(5) The Interim Rule issued by the defendant HUD on August 8, 1975, is effective as of that date.

11. There was a waiting list of 400 applicants on December 9, 1975. There may have been a lesser number on August 8, 1975.

**48**

 (6) An order will be entered declaring the action of the defendant MDHA in maintaining a rent-range system in conflict with the United States Housing Act of 1937, as amended, and as interpreted in *Fletcher, et al. v. Housing Authority of Louisville, et al., supra*, was until August 8, 1975, unlawful and enjoining defendants MDHA and HUD from maintaining and applying same. The defendant MDHA is ordered to process all applications received prior to August 8, 1975, which are on the waiting list on a first-come, first-served basis, taking into account only size of unit needed, emergency, or other normal relevant and reasonable criteria, limited to the number which would have been housed absent the illegal restraints imposed by the October 10, 1972 selection policy.