NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13412


FAIRHAVEN HOUSING AUTHORITY & others[1]  vs.  COMMONWEALTH &
another.[2]


Suffolk.     October 2, 2023. - November 6, 2023.

Present:  Budd, C.J., Gaziano, Lowy, Kafker, Wendlandt,
& Georges, JJ.


Department of Housing and Community Development.  Housing
     Authority.  Contract, Employment.  Statute, Construction,
     Amendment.  Declaratory Relief.  Practice, Civil,
     Declaratory proceeding, Motion to dismiss.  Administrative
     Law, Agency's authority.


     Civil action commenced in the Superior Court Department on
January 9, 2020.

     A motion to dismiss was heard by Rosemary Connolly, J.

     The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.

---

[1] Lawrence Housing Authority, Medford Housing Authority,
Nantucket Housing Authority, Provincetown Housing Authority,
Stoneham Housing Authority, Sudbury Housing Authority, Renee H.
Ceely, Kristin Hatch, Efrain Rolon, Sharon Wilkins, Brian
Costello, and the Massachusetts Chapter of the National
Association of Housing and Redevelopment Officials.

[2] Department of Housing and Community Development.

Michele Randazzo for the plaintiffs.

Eric A. Haskell, Assistant Attorney General, for the defendants.

Frank A. Flynn, for Southeastern Massachusetts Executive Directors Association & others, amici curiae, submitted a brief.


WENDLANDT, J.  This case presents the question whether G. L. c. 121B, § 7A, grants the Department of Housing and Community Development (DHCD)[3] the authority to decline to approve employment contracts between local housing authorities (LHAs) and their executive directors where those contracts fail to conform to DHCD's guidelines.  Concluding that it does, we affirm the well-reasoned decision of the Superior Court judge dismissing the declaratory judgment complaint.[4]

1.  Background.  "We summarize the factual allegations set forth in the complaint and in the undisputed documents incorporated by reference in the complaint."  Osborne-Trussell v. Children's Hosp. Corp., 488 Mass. 248, 250 (2021).  We "accept[] as true all well-pleaded facts alleged in the

---

[3] In 2023, DHCD changed its name to the Executive Office of Housing and Livable Communities and became a cabinet-level secretariat.  In the past DHCD was referred to as the Department of Community Affairs.  In keeping with the complaint and briefs, we refer to the agency as DHCD.

[4] We acknowledge the brief of amici curiae Southeastern Massachusetts Executive Directors Association, Central Executive Directors Association, North Shore Executive Directors Association, Small Housing Authority Directors Organization, and Western Massachusetts Housing Authority Executive Directors Association.

complaint." Id. at 253, quoting Ryan v. Mary Ann Morse Healthcare Corp., 483 Mass. 612, 614 (2019).

The plaintiffs are LHAs of various cities and towns in the Commonwealth, current and former executive directors of LHAs, and the Massachusetts chapter of the National Association of Housing and Redevelopment Officials, a membership association of LHAs, community development agencies, and housing and redevelopment officials. At the time of the complaint, DHCD was a department within the Commonwealth's Executive Office of Housing and Economic Development and, as "supervisor" of LHAs, had the "power to oversee most phases of the operations of" them. West Broadway Task Force, Inc. v. Commissioner of the Dep't of Community Affairs, 363 Mass. 745, 748 (1973).

The plaintiffs allege that DHCD has exceeded its authority under G. L. c. 121B, § 7A, by promulgating guidelines, referred to as public housing notices (PHNs), that govern contracts between an LHA and its executive director in a manner that interferes with the authority of the LHA to "determine [the] qualifications, duties and compensation" of its executive directors as provided by G. L. c. 121B, § 7. Among other things, DHCD's guidelines require that contracts between an LHA and an executive director be in writing and be approved by DHCD. See Department of Housing and Community Development, PHN No. 2017-21 at 2-3 (Sept. 7, 2017). The guidelines set forth an executive

director's maximum allowable salary based on a formula and a schedule for executive director salary, including a capped maximum salary amount.[5]  See Department of Housing and Community Development, PHN No. 2019-21 at 3-4 (Sept. 16, 2019).

The guidelines also include a template agreement[6] and require use of a cover sheet.  See Department of Housing and Community Development, PHN No. 2017-25 at 2-4 (Oct. 31, 2017). DHCD's guidelines require contracts to include limitations on the numbers of hours for which the executive director may be compensated, a provision for binding arbitration for dispute resolution, and a "for cause" termination[7] provision.  Id. at 8, 10, 13.  An LHA executive director's benefits must be governed

---

[5] Four versions of the schedule have been published since the passage of G. L. c. 121B, § 7A.  See Department of Housing and Community Development, PHN No. 2015-17 (July 1, 2015); Department of Housing and Community Development, PHN No. 2018-01; Department of Housing and Community Development, PHN No. 2019-21 (Sept. 16, 2019); Department of Housing and Community, PHN No. 2022-02 (Jan. 26, 2022).

[6] While DHCD does not make the template agreement mandatory, it "highly recommends use of this contract template in order to facilitate its prompt review and approval, and will provide expedited review for housing authorities utilizing the contract template."  Department of Housing and Community Development, PHN No. 2017-25 at 2 (Oct. 31, 2017).  According to the plaintiff's complaint, DHCD has rejected "virtually all" contracts that do not follow its template agreement.

[7] Under this provision, the LHA "may and, under certain circumstances . . . , shall terminate" the employment contract of its executive director for "any lawful reason in good faith relied upon by the [LHA]."  PHN No. 2017-25, supra at 10.

by an LHA personnel policy approved by DHCD.[8]  Department of

Housing and Community Development, PHN No. 2019-29 at 1 (Dec.

11, 2019).  The guidelines prohibit contracts that include

provisions for longevity payments,[9] automatic contract renewals

or extensions, or indemnification of the executive director.

PHN No. 2017-25, supra at 15.

DHCD has withheld funding and budget approvals when

contracts depart from the guidelines.  Several executive

directors have accepted reduced compensation as a result of

DHCD's approval process.

2.  Procedural history.  The plaintiffs filed a complaint

pursuant to G. L. c. 231A, § 1, seeking a judgment declaring

that DHCD exceeded its authority by promulgating guidelines for

contracts between LHAs and executive directors and making

---

[8] DHCD's guidelines require that executive director benefits
may not exceed the "benefits available to DHCD's administrative
union . . . employees."  Department of Housing and Community
Development, PHN No. 2019-29 at 1 (Dec. 11, 2019).  However,
"DHCD will review and consider a request for deviation from
[state employee union benefit] standards so long as it can be
demonstrated that the deviation is reasonable . . . and that the
contract terms will not negatively impact either the financial
condition of the [L]HA or the [L]HA's staff and coverage
availability."  Id. at 2.

[9] Longevity payments refer to "increased compensation on the
basis of increased years of service."  PHN No. 2017-25, supra at
15.  DHCD began allowing such payments as "bonuses" in 2022, but
the bonus cannot be used in calculating an executive director's
retirement benefits.  Department of Housing and Community
Development, PHN No. 2022-16 (Sept. 21, 2022) at 3.

compliance with the guidelines a requirement to obtain contractual approval from DHCD. A Superior Court judge allowed DHCD's motion to dismiss the complaint under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974).[10] The plaintiffs timely appealed, and we transferred the case to this court on our own motion.

3. Discussion. "We review the allowance of a motion to dismiss de novo, accepting as true all well-pleaded facts alleged in the complaint." Osborne-Trussell, 488 Mass. at 253, quoting Ryan, 483 Mass. at 614. "We draw all reasonable inferences in the plaintiff's favor, and determine whether the allegations plausibly suggest that the plaintiff is entitled to relief on that legal claim" (quotations omitted). Osborne-Trussell, supra, quoting Buffalo-Water 1, LLC v. Fidelity Real Estate Co., 481 Mass. 13, 17 (2018). See Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008). "To survive a motion to dismiss, the 'factual allegations must be enough to raise a right to relief above the speculative level based on the assumption that all the allegations in the complaint are true

---

[10] Contrary to the plaintiffs' contention, the judge did not convert the motion to dismiss into a motion for summary judgment by considering DHCD's guidelines referenced in the complaint. See Ryan, 483 Mass. at 614 n.5 (where "the complaint makes clear reference" to document and "neither party disputes [its] existence or terms," it may be considered in connection with motion to dismiss).

(even if doubtful in fact)'" (alterations omitted).  Osborne-Trussell, supra, quoting Sudbury v. Massachusetts Bay Transp. Auth., 485 Mass. 774, 779 (2020).  "The facts alleged must plausibly suggest (not merely be consistent with) an entitlement to relief" (quotation, citation, and alteration omitted). Osborne-Trussell, supra.

The complaint seeks a declaratory judgment regarding the scope of DHCD's authority under G. L. c. 121B, § 7A -- a question of statutory interpretation, which we review de novo. See Armstrong v. Secretary of Energy & Envtl. Affairs, 490 Mass. 243, 247 (2022).  In deciding whether an agency is acting within its statutory authority, we use "conventional tools of statutory interpretation" to determine "whether the Legislature has spoken with certainty on the topic in question"; if the statute is unambiguous, "we give effect to the Legislature's intent."  Id., quoting Goldberg v. Board of Health of Granby, 444 Mass. 627, 632-633 (2005).

> "[T]he general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated."

Reagan v. Commissioner of Revenue, 491 Mass. 446, 451 (2023), quoting Oracle USA, Inc. v. Commissioner of Revenue, 487 Mass.

518, 522 (2021). Accordingly, we begin our analysis with the words of the statute. "[O]rdinarily, where the language of a statute is plain and unambiguous, it is conclusive as to legislative intent" (citation omitted). Osborne-Trussell, 488 Mass. at 254.

Adopted in the wake of a public scandal involving the executive director of a local housing authority,[11] G. L. c. 121B, § 7A, provides that:

> "[DHCD] shall promulgate guidelines for contracts to be executed by the housing authority and an executive director. [DHCD] may review all contracts between the housing authorities and executive directors and all terms for payments or monetary remuneration relevant to state payments; provided, however, that [DHCD] shall review all contracts and all terms for payments or monetary remuneration worth more than $100,000 per annum. [DHCD] may strike contract provisions that do not conform to the guidelines." (Emphases added.)

The complaint alleges that DHCD has exceeded its authority to issue "guidelines" by requiring contracts between LHAs and executive directors to comply with the guidelines. Specifically, the plaintiffs maintain that the Legislature's use of the term "guidelines" evinces an intent that DHCD issue broad parameters that lack the force of a mandate. The term "guideline" does not support the plaintiffs' argument. A "guideline" is "an indication or outline of policy or conduct."

---

[11] See Chelsea Hous. Auth. v. McLaughlin, 482 Mass. 579, 582 (2019) (involving unreported compensation of executive director of Chelsea Housing Authority).

Merriam Webster Collegiate Dictionary 555 (11th ed. 2020).  This definition does not preclude such rules from being mandatory. Any ambiguity in this regard is clarified by the Legislature's granting DHCD the authority to "strike contract provisions that do not conform to the guidelines."  See Malloy v. Department of Correction, 487 Mass. 482, 496 (2021), quoting Pentucket Manor Chronic Hosp., Inc. v. Rate Setting Comm'n, 394 Mass. 233, 240 (1985) ("we look not only to the specific words at issue but also to other sections [of the statute], and 'construe them together . . . so as to constitute an harmonious whole consistent with legislative purpose'").

We disagree with the plaintiffs' contention that this construction is at odds with the authority of LHAs, pursuant to G. L. c. 121B, § 7, to "determine [executive directors'] qualifications, duties and compensation."  "We assume that, when it enacts legislation, the Legislature is . . . aware of existing statutes."  Suliveres v. Commonwealth, 449 Mass. 112, 116 (2007).  Pursuant to the statutory scheme governing the relationship between DHCD and LHAs, DHCD operates as "the administrative superior" of LHAs.  West Broadway Task Force, Inc., 363 Mass. at 748 & n.4, citing G. L. c. 121B, §§ 1, 11, 29, 30-32, 34, 35, 37.  DHCD has the "power to oversee most phases of the operations of the local housing authorities, and to that end it is given various powers of approval and veto of

the activities of those authorities together with rule making power and power to demand reports and other information."[12] West Broadway Task Force, Inc., supra at 748.

Subject to DHCD's supervision, LHAs retain "operating responsibility and corresponding powers regarding the finances, construction, maintenance, and day-to-day management of housing projects in [their municipalities]." Id. In view of this framework, and against the backdrop of a public scandal, see note 11, supra, the Legislature enacted G. L. c. 121B, § 7A, to give DHCD further authority and oversight regarding the terms of executive director contracts with LHAs.[13] Within those constraints and consistent with the oversight allowed to DHCD by G. L. c. 121B, § 7A, LHAs continue to have authority to hire

---

[12] See, e.g., G. L. c. 121B, § 3 (DHCD shall certify dissolution of housing authority), § 5 (DHCD shall appoint one member of each housing authority), § 26 (j) (renovation of existing housing project "shall be undertaken in accordance with rules and regulations promulgated by [DHCD]"), § 26 (k) (DHCD must approve demolition of existing project), § 26B (DHCD must establish performance-based monitoring program for all LHAs), § 28A ("Each housing authority shall submit to [DHCD] an annual plan"), § 29 ("[DHCD] shall investigate the budgets, finances and other affairs of housing authorities and the housing authority's dealings, transactions and relationships"), § 31 ("A housing authority shall not undertake a low-rent housing project until it has submitted to [DHCD] the plans and description of the project . . .").

[13] Section 7A was passed alongside G. L. c. 121B, § 26B, which requires LHAs to participate in a performance-based monitoring program established by DHCD and allows DHCD to designate a housing authority as "chronically poor performing." See St. 2014, c. 235, §§ 7, 8.

executive directors and "determine their qualifications, duties and compensation."[14]  G. L. c. 121B, § 7.

Judgment affirmed.

---

[14] The plaintiffs also contend that DHCD's use of "guidelines" to mandate material terms of an executive director's contract effectively renders them "regulations" subject to the rulemaking provisions of the Administrative Procedure Act (APA), G. L. c. 30A, § 5, which require, inter alia, that proposed regulations be published and considered at a public hearing.  We disagree.  The term "regulation" as used in the APA excludes "regulations concerning only the internal management or discipline of the adopting agency or any other agency . . . not substantially affecting the rights of or the procedures available to the public or that portion of the public affected by the agency's activities."  G. L. c. 30A, § 1 (5).  The guidelines promulgated pursuant to G. L. c. 121B, § 7A, concern the internal management of LHAs under the oversight of their supervisor, DHCD; they "do not purport directly to regulate public conduct."  Commonwealth v. Trumble, 396 Mass. 81, 89 (1985).  Cf. Harborview Residents' Comm., Inc. v. Quincy Hous. Auth., 368 Mass. 425, 426-427 (1975) (concerning regulations governing public housing tenant leases and grievance procedures); Commissioner of the Dep't of Community Affairs v. Medford Hous. Auth., 363 Mass. 826, 828 (1973) (concerning regulations governing LHA's interaction with public housing tenants).